UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Springfield Division

| | |
|---|---|
| **JUSTIN T.,** | |
| **Plaintiff,** | |
| v. | Case No. 25-3044 |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
| **Defendant.** | |

REPORT AND RECOMMENDATION

Plaintiff Justin T. ("Plaintiff") seeks review under sentence four of 42 U.S.C. § 405(g) of the Social Security Administration's denial of his application for disability benefits. After reviewing the record, administrative transcript, and parties' briefs, the Court recommends that the Commissioner's decision be affirmed.

I.     **Legal Standard**

The Supreme Court held that in reviewing disability cases, courts should "defer[] to the presiding ALJ, who has seen the hearing up close." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). The district court's role is "limited to ensuring that substantial evidence supported the ALJ's decision and that the ALJ applied the correct legal standards." *Morales v. O'Malley*, 103 F.4th 469, 472 (7th Cir. 2024). The threshold for substantial evidence "is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

"It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). When reviewing a disability decision for substantial evidence, "[w]e will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

II.   Analysis

Here, the ALJ found Plaintiff had the following severe impairments: affective, anxiety, neurocognitive disorder, status post brain cancer, migraine headaches, osteoarthritis of the spine, cannabis abuse disorder, and obesity. (R. 18). The ALJ then assessed Plaintiff's residual functional capacity ("RFC") and found:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except where the claimant can occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant can frequently perform bilateral manipulative functions. The claimant must avoid environmental hazards such as unprotected heights and dangerous machinery; and avoid concentrated exposure to extreme temperatures, humidity, vibrations, and to loud and very loud noises. The claimant is limited to understanding, remembering and carrying out simple instructions, can make simple work-related decisions, with only occasional changes to a routine work setting. The claimant can have no interactions with the general public, but he can occasionally interact with supervisors and coworkers.

(R. 21). Ultimately, the ALJ found Plaintiff was not disabled. (R. 27).

Plaintiff argues the Court should reverse the ALJ's decision and remand the case for two reasons. First, Plaintiff argues the ALJ erred by failing to properly evaluate Plaintiff's mental limitations in his ability to adapt or manage himself. Second, Plaintiff argues the ALJ erred in evaluating Plaintiff's subjective testimony by mischaracterizing the medical evidence.

A.   Mental Limitations

Here, at Step 2, the ALJ concluded Plaintiff had mild limitations in his ability to adapt or manage oneself, stating:

> As for adapting or managing oneself, the claimant has experienced a mild limitation. The claimant reported that he was living in an apartment with his family (3E/1). He could care for his pets (3E/2). **He had no problems with his personal care activities (3E/2)**. He could fix frozen dinners for himself and take out the trash (3E/3). The claimant could drive and go out alone (3E/4). He reported that he could shop in stores, pay bills, count change, and use a checkbook (3E/4). He reported that he could only pay attention for up to a minute (3E/6), but he also reported that his interests

2

> included watching movies and television, and that he was able to do that activity all day (3E/5), so it appears that the claimant may be able to pay attention for more than a minute at a time. His mother, Jane Garmon, reported that the claimant lived with her and his aunt (4E/2). She reported that the claimant had no problems with his personal care activities, and he could fix sandwiches and frozen dinners for himself (4E/3). In a letter, she reported that the claimant would sometimes sleep excessively (13E/1).

(R. 20) (emphasis added).

Plaintiff argues that the ALJ ignored medical records showing Plaintiff has significant difficulty maintaining proper hygiene. Consequently, Plaintiff argues, the ALJ failed to properly assess Plaintiff's limitations in adapting and managing himself and include such limitations in the RFC. Plaintiff argues that if the ALJ had properly assessed Plaintiff's limitations, the RFC may have reflected greater employment restrictions.

Here, the ALJ considered treatment notes showing Plaintiff went for "a month or two without showering, and that he never brushed his teeth" as well as presented "malodorous and unkempt." (R. 22, 24, 445, 514, 534, 610). However, the ALJ also considered statements from Plaintiff and his mother that he had no problems with his personal care activities and that he appeared with intact personal hygiene and grooming at his psychological consultative examination. (R. 20, 198, 206, 478). Plaintiff has not established how the record required the ALJ to include greater limitations than those already in his mental RFC assessment or what those greater limitations should be. The ALJ did not err as to Plaintiff's mental limitations.

### B.   Subjective Statements

Here, regarding Plaintiff's credibility, the ALJ stated:

> The claimant's statements about the intensity, persistence, and limiting effects of his symptoms are not consistent with the evidence. The claimant testified that he might be able to perform a job as a janitor but he was concerned whether he could get along with his boss. The claimant has osteoarthritis of the spine and he is obese, but physical examinations have been grossly normal. He has a history of brain cancer from several years ago, with attendant migraine headaches, but he testified that he is not taking any medications other than his medical marijuana. Physical examinations have been grossly normal (2F/8, 6F/14, and 4F/26). The

> record does indicate that the claimant uses marijuana regularly, and he was diagnosed with cannabis dependence (12F/45). In June 2023, the claimant reported that he had used a month's supply of marijuana in one week (11F/32). The claimant has attended counselling [sic] sessions for his mental impairments, but he refused to even consider any psychotropic medications (8F/1). **Mental status examinations have been grossly normal** (5F/15, 5F/9, 7F/2-3, 11F/86, 11F/46, 11F/34, and 11F/10). The claimant is living with his mother, he is independent in his personal care activities, and he is able to drive. The evidence in the record supports the residual functional capacity described above, which is compatible with competitive work.

(R. 25) (emphasis added).

Plaintiff argues that the record reveals multiple mental status exams that are not "grossly normal" and that the ALJ mischaracterized the medical evidence by stating so. Plaintiff argues the ALJ erred by relying on this mischaracterization in rejecting Plaintiff's subjective complaints.

Plaintiff's argument that the ALJ used the term "grossly normal" does not establish error. The ALJ discussed how Plaintiff's mental status examinations often showed normal judgment, fair insight, orientation, normal cognition, and no suicidal or homicidal ideations, though he sometimes had a depressed or withdrawn mood, flat or sad affect, and reported visual hallucinations. (R. 22-24, 415, 421, 448, 468, 472, 483, 514-15, 534-35, 550-51, 588, 590, 610, 638). The ALJ also cited Plaintiff's March 2022 consultative psychological evaluation, where he was fully oriented, had normal speech, a euthymic mood, was cooperative, had good eye contact and effort, had normal memory, and displayed adequate judgment. (R. 23, 480).

Regarding opinion evidence, the ALJ found the opinions of the State Agency Psychological Consultants generally persuasive, as they opined Plaintiff can carry out short and simple instructions, cannot work with the general public, and can respond appropriately to changes in the work setting. (R. 26). The ALJ, however, further restricted Plaintiff to occasional interactions with supervisors and coworkers and only occasional changes in routine. (R. 21, 26). "When no doctor's opinion indicates greater limitations

than those found by the ALJ, there is no error." *Dudley v. Berryhill*, 773 F. App'x 838, 843 (7th Cir. 2019).

Finally, Plaintiff briefly argues the ALJ failed to identify any inconsistencies between Plaintiff's testimony and activities of daily living or medical records. Because Plaintiff has not developed his argument in this regard, the Court will not address this point. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."). The ALJ did not err as to Plaintiff's subjective statements.

### III.     Conclusion

For the reasons discussed above, the ALJ's decision is supported by substantial evidence and the ALJ did not err. The Court recommends that the ALJ's decision be affirmed. The parties are advised that any objection to this recommendation must be filed in writing with the clerk within fourteen (14) days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTERED this 5th day of February, 2026.

                                s/ERIC I. LONG
                    UNITED STATES MAGISTRATE JUDGE